The next case this morning is 5 22 0395 people versus McClendon arguing for the defendant appellant Christopher Gerke arguing for the state appellee is john Barrett. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Morning, gentlemen. Good morning, your honors. Mr Gerkey, you ready to proceed? I am. Yes. You may do so. Thank you. May it please the court. My name is Christopher Gerke. I represent Leander blended in this case. Leander was just 16 years old and he committed the offenses that in this case, I'd like to start with the eighth amendment sentencing issue. Um, in Graham versus florida, the United States Supreme Court held that for a juvenile non homicide offense. So I want to emphasize non homicide offense. Uh, there's a categorical bar imposing a life term for a juvenile offender unless that life sentence provides a meaningful opportunity for release based on demonstrated mature rehabilitation. Now, in this case, there's no question that Leandre 65 year sentence is a de facto life term, but that sentence does not provide a meaningful opportunity for release even under Illinois new parole statute for a couple of reasons. First, there's an undisputed sort of national consensus against the kind of strict limitations on parole for juvenile Illinois, a juvenile life term for this kind of sex offense that Leandre was convicted of in Illinois is by far the hardest in the country. Under Illinois law, a juvenile offender has just two chances in their entire life to obtain parole. Those two chances are separated by an interval of no fewer than a decade, no less than a decade. And those opportunities are only available after serving 20 years in prison and no other state even comes close to that level of restriction. Um, so for the same offense, the overwhelming majority, why does that statute violate the eighth amendment? You said it's against the national consensus, but Illinois doesn't need to follow a national consensus. The reality is that your client has the opportunity for parole after 20 years. Let me clarify on our argument is we are not arguing that the juvenile parole statute is unconstitutional. I'm meant to convey what I meant to convey is that my client's sentence is unconstitutional. And the question is, my client has a life sentence under Graham. It's de facto life sentence. It's categorically barred because it's a non homicide offense. So the question is, does Illinois provide a meaningful opportunity for a lease? And when assessing a penalty under the eighth amendment, you look at you do look at the national consensus. So the penalty in Illinois, juvenile life with parole in Illinois for this type of in other states. And so you do have to look to the national consensus to assess whether under the eighth amendment, this type of penalty is proportional. And because the rest of the country provides unlimited parole chances, not just two lifetime chances. The rest of the country provides those parole chances every year, every couple of years, not one chance after a decade. Illinois is life without parole sent for life with parole sentence for this type of offense is significantly harsher than the rest of the country. It is contrary to our national evolving standard of decency, and therefore it is disproportionate for that reason. But even setting aside the national consensus, we have the fact that the parole law doesn't require consideration of youth as Graham and Miller required, therefore doesn't provide a meaningful opportunity for release for that reason as well. The first district recently held in people versus gates, which is the case I said as additional authority that the under 21 parole statute does not provide a opportunity for release constitutionally, even for a young adult homicide offender, much less a juvenile offender convicted of non homicide offenses. And it did so for a couple of reasons. One of the reasons is that when I just described providing just two lifetime chances for parole 10 years apart after serving 20 years, um, is is not much of a chance at all. And especially and that's especially consistent with what we know about youth that juvenile offenders are highly capable of rehabilitation. And so it's also noted that there's a lack of judicial review of the parole decision. There's no, there's no judicial review of parole decisions. So, um, there's no judicial review of parole decisions in Illinois, so there's no way to ensure that youth is properly considered. Um, and in fact, the Massachusetts Supreme Court held just last year or I'm sorry, in 2022 that, uh, there is no meaningful opportunity for release. If a juvenile offenders parole decision doesn't have judicial review. And even apart from those factors, your honors, we have the fact that the youth factors are not specified in the parole statute. Surely the parole statute does refer to terms as hallmark features of youth diminished culpability of youthful offenders. But those terms are vague. If I'm a, if I'm a parole board member who's not a lawyer or who's a lawyer but not a criminal lawyer like, uh, like myself and opposing counsel, I don't know what a hallmark feature of youth is. I don't know what that means. It doesn't specify anything that's laid out in Miller or Graham or even in Illinois juvenile sentencing factors like, you know, immaturity, impulsivity, uh, environmental concerns, uh, negative influences. And so, and it's also, uh, particularly unclear because it refers to that statute applies to both juveniles and adult offenders. So where the eighth amendment draws a strict delineation between the considerations for youth minors and for adults, the Illinois parole statute refers to in the context of applying to both of them. So it's particularly unclear for that reason as well. And finally, your honors, we have the fact that the parole statute, uh, hinges the parole decision on the seriousness of the crime. It states that the juvenile offender, I'm sorry that the parole board shall not parole a juvenile offender of doing so and deprecate the seriousness of the crime. And that's exactly contrary to Graham, Miller and Montgomery, all of which specified that juvenile offenders, even when they ability. And so, and, and for that reason, your honor, for those four reasons, because there's such limited opportunities because there's no judicial, uh, judicial review because the youth factors aren't specified. And because the whole process hinges on the seriousness of the crime, um, our argument that that Illinois does not provide a meaningful opportunity for a lease for a juvenile offender who is serving a de facto life term. Um, and in addition that, that we have the fact that it's outside the national scope, the national standard of decency in our country, and therefore asking this court to find that my client's 65 year sentence is a de facto life term, uh, that violates Graham versus Florida for non-homicide because it's a non homicide defense and therefore warrants a new sentencing hearing. In addition, your honors, uh, your honors can alternately find that my client's sentence violates proportionate penalties clause of Illinois, of uh, that my client and his cousin and his brother saw a car driving down the road, decided to steal it in that moment while they're still in the car. My client decided to commit these sex offense in that moment. And we know that impulsivity is not just a youth factor. We know it was particularly salient for my client because it was untreated cognitive and mental health issues. Uh, Dr. Cuneo in his trial fitness report specified that my client was borderline intellectual disorder. Um, and that, that made him quote extremely impulsive and that quote mental illness was a factor that brought about his actions in this case. Uh, and that was really further compounded by the fact that by negative family and peer influences, particularly that of his mother, my client's mother was offered numerous mental health services, including a specific liaison who would have ensured that he would obtain medication, counseling and psychiatric health. But she refused that because she, uh, didn't believe in counseling for some reason. And my, and just months after her refusal is my client committed these offenses in this case. Um, and we, but the good thing is we know that, uh, because impulsivity diminishes with age, um, my client will become less impulsive as, as he matures. And we know that from Dr. Cuneo's report, Dr. Cheryl post report or from the probation officer that, that they believe that medication and counseling would improve my client's mental health conditions. And therefore he's no different than any other juvenile offender who we know has great rehabilitative potential. And so even, so then we're asking this court to find that if not under the eighth amendment, that this extreme 65 year sentence with minimal distance parole opportunities for a juvenile offender convicted of non homicide crimes is contrary to Illinois evolving standards of decency under the particular circumstances of my client's case. And finally, your honors, we, if not these constitutional issues, we ask you to find that defense counsel is ineffective. Um, in 2021, this court remanded for a new juvenile sentencing hearing. And at that new sentencing hearing, uh, my client sentence hinged on how the trial court would evaluate his cult relative culpability and rehabilitative potential based on evidence of his youth, his brain development, his mental health, and his individual circumstances, particularly under the factor of the juvenile sentencing statute. But defense counsel in this case did not present any expert or any evidence at all, really, or even argument about youth cognitive issues or treatment related to that statute. Counsel's only arguments were that this court was that the trial court could not impose another 80 year sentence, and that the trial court should impose a sentence less than 40 years. That's it. Counsel treated this more like a legal issue at a motion to reconsider sentence that he did a juvenile sentencing hearing where you present mitigating evidence for your client. Counsel did stipulate to the prior sentencing proceedings, but no youth related sentencing evidence was presented then either. The prior sentencing hearings at most reference pretrial reports about my client's fitness to stand trial, but none of those findings related directly to how his cognition or mental health or his youth pertained to his culpability with crime, or how his future rehabilitative potential for sentencing purposes. In any event, those documents were up to seven years old at the time of the 2022 sentencing hearing. We ask you to find that counsel for essentially not putting on any juvenile sentencing evidence was objectively unreasonable, and that my client could receive a lower sentence. I'm sorry, I seem out of time. If this court were to follow people versus gates, as you suggest, what relief would you be seeking in light of that? I'm sorry, we're seeking a new sentencing hearing. And that would be based on the argument you just made that he didn't receive arguments related to his youth? Or would that be ineffective? So under under Graham versus Florida, it is constitutionally in is constitutionally unacceptable to impose a de facto life term on a juvenile offender. And so we'd be asking for a new sentencing hearing where the court would have discretion to impose up to, I believe, 40 years in prison, which is the standard set forth in Illinois Supreme Court and as being a de facto life term. So any sentence over a de facto life term, because Illinois statute doesn't quite go far enough to provide a meaningful opportunity for release, it still remains a de facto life sentence. So for Mr. McClendon, in particular, because he's been convicted of non homicide offenses, he can't get a lot he can't get a life sentence. So that that would be our request would be to remand for a new sentencing hearing where the court could impose a sentence of up to 40 years. So you're saying that non homicide offense, juvenile in Illinois, under these circumstances, could not receive a sentence over 40 years? For a juvenile offender? Yes, because because buffer says the line at 40 years at 40 years, and because of Graham versus Florida says that it's categorically unconstitutional to give a sentence, a life sentence to a juvenile offender. Okay, we're not homicide offenses, excuse me, just for non homicide offenses, not for homicide. Okay, Mr. Gurkey, you'll have a few minutes after Mr. Barrett makes his argument. Mr. Barrett, you ready to proceed? I am. Good morning, Your Honors. May it please the court counsel, John Barrett  Okay. Addressing first kind of working our way backwards. This proportionate penalties claim the defendants raising. Um, I would point your honors to the staircase where the defendant in that case had not raised a proportionate penalties claim with respect to consideration of youth factors and forfeited on appeal. Um, this was not brought up below, and, uh, there was no new substantive rule of law with respect to proportionate penalties clause that would have prevented him from bringing a claim like this earlier. So it's the people's position that the that the proportionate penalties clause argument is forfeited. Um, and not only that, at the at the sentencing hearing, there were some criticisms about the kind of considerations, um, that were presented. But all all of the evidence that the defendants discussing that would have been mitigating, like the mother's, uh, failure to seek counseling for the child, uh, her failure to administer the medication and and, you know, put him through some of the proper programs that were recommended by the court at the time, those things were all considered by the court. They were all before the court and the court acknowledged that there were mitigating factors in play, but that the aggravating factors in this case superseded those. They outweighed these mitigating factors. And the defendant had a long history. Um, as a juvenile offender, there were 14 to 15 incidents while he was in the was arrested in this case. And when he was in D. O. C. There was continued violence. There was there was escalation of this kind of conduct. Um, his behavior was not modified by opportunity after opportunity after opportunity that the court was giving him in this case. And, uh, one of the reasons this parole statute, uh, is meaningful, provides a meaningful opportunity is that it gives that time for a defendant to show that maturity. This isn't something that we're going to see at a sentencing hearing. This is something that's going to take 10 years, maybe 20 years to, to process into the defendant's experience while he's incarcerated. And given that this statute, if you examine the parole statute, they are required, they're 100% required to not just generically the hallmarks of youth, but there are the procedural safeguards in place to present psychological evaluations to prevent or to present testimony from psychologists and psychiatrists. There are processes in place to put forth character testimony. Um, the defendants notified in writing in the event that it's denied and they have to go forth specifically and outline the reasons for denying parole. And, uh, to the extent that that can't be appealed. Well, actually it can be because if any of those reasons are improper, a habeas corpus petition can be filed either in state court or federal court. And there are other avenues to attack that decision. So there's, the whole process is about transparency and affording defendant an opportunity to put forth mitigating evidence to put forth psychological reports, evidence of his maturity in DOC as he's aging in prison. And, uh, the Illinois statute with respect to the sister States argument, you know, the United States Supreme court in Wyoming v. Louisiana found that the defendant's life sentence was, uh, rendered constitutional by the retroactive application of a 25 year parole statute. Prior to this case, there was parole was not, was not afforded to this defendant who received this life sentence. The first opportunity in Wyoming for parole is 25 years in this state. It's it's 20 given the severity of defendants case. For a lesser offense, it would be 10 years, but for aggravated criminal sexual assault, the severity of, of that kind of a case, it is 20 years. But, uh, could you address the statement by, um, Mr. Gerke that you cannot sentence a juvenile to more than 40 years and a non homicide crime. You can, if it's through discretion, the court, the court cannot have their hand forced to, to render a sentence of greater than 40 years to a juvenile defendant. But the minimum possible sentence in this case, if you look at the actual minimum sentences that were afforded, which is six to 30 on the aggravated criminal sexual assault, which is to be, was served consecutive to the criminal sexual assault. Um, there, that is the, the sentence in that case was minimum four maximum, I believe 15 to 20 somewhere in there. But if you look at the minimum, uh, sentences in that case, we're at under 40 years, we don't reach 40 years. And then the other, the other, uh, like vehicular homicide or vehicular, uh, uh, the vehicular offense and the robbery offense. Um, those were concurrent sentences, discretionary concurrent sentences. So the ultimate sentence in this case was not a mandatory above 40 year sentence. It was discretionary. And it also affords him the opportunity for parole in 20 years. So you believe that there's no case law that says, uh, a non-homicide juvenile offender cannot be sentenced to more than 40 years. The rule is that the juvenile offender can be sentenced to more than 40 years. So long as it's discretionary with the trial court and not mandatory. So long as it's discretionary with the trial court and so long as the defendant is afforded an opportunity, a meaningful opportunity for release through the parole statute, like we have here in the state of Illinois. What about the national consensus argument that Illinois is different? And well, your honor, I was just attempting to kind of address that with the Wyoming statute where the first opportunity for parole is 25 years. Whereas in this state, it's actually 10 years. So with, for juvenile offenders in this state, it's 10 years for a more serious offense, like aggravated criminal sexual assault, it's 20 and that's the outermost. But, uh, I only have a couple of minutes here. I want to be able to address. How do you distinguish people versus gates, which found ineffective assistance of counsel for failing to, um, raise the proportionate penalties clause under the statute? I believe, I believe in that case, and forgive me, your honors, but I'm not remembering the exact facts of the case, but I believe that was actually raised. It wasn't forfeited in that case. Whereas here that proportion of penalties clause was not raised below. It was forfeited. And in this case, the limitation only on the parties, not the court. And if, and it fails even on the merits here, because we know that the court considered all of those mitigating factors and decided through its discretion that the aggravating factors, uh, you know, the sentence we have is the appropriate sentence. But the first district doesn't believe that the, uh, sentencing statute gives a meaningful opportunity for juveniles to obtain parole in people versus gates. Are you familiar with that case? I, I, I need to go back and review that case just a little bit more, your honors, but I believe in that case, there was also some neglect of looking at the, the actual mitigating factors and the youth factors, whereas in this case, the trial court had all of those factors in front of it and considered those because if you examine the record, the initial sentencing hearing, and then the resentencing hearing, and you go through the record, the trial court explicitly states that he considered the psychological evaluations defended subsequent offenses while he was in DOC. He outlines all, all of the things that were presented to him, including the updated pre-sentence investigation report at the resentencing hearing. So this, the court was careful and thorough in this case to outline all the things that it considered. Um, as my time is approaching almost being up here, I did want to just briefly address the ineffective assistance claim, if I could, of your honors. You have a couple of seconds. Okay. The, the, uh, counsel in this case did consider the Beck case, the one criticism here was that he didn't have that case. Um, he reviewed it and then he commented on it, which was what any reasonable counsel would have done in that circumstance. We have a wide body of changing law, evolving law. He was very familiar with all the relevant case law, the one case, Beck case that he had to stop and review it quickly and then did. And then commented on it, showed that he was rendering reasonable assistance. And then the trial court did have everything from the original sentencing hearing and the recent at the resentencing hearing. So there was no additional evidence that counsel could have presented. Okay. Outside of the, our legal arguments. Thank you, Mr. Barrett. Uh, Mr. Gerke, you have rebuttal. How do you distinguish the Barrett, the Beck case, Mr. Gerke? Uh, well, the Beck case, uh, for each of my own purposes is distinguishable for a few reasons. First is that it addressed a completely different issue in a different context. In that case, the court was addressing the defendant's argument that, um, that parole was irrelevant to the eighth amendment analysis and Beck correctly rejected that argument, uh, Beck's also distinguishable because it involved different statutes. So the national consensus argument doesn't really apply. It involves statutes that provided, uh, I think three opportunities for release after serving 10 years versus two lifetime chances after serving 20 years with a 10 year interval. And those three chances, they also in the other case were five years apart. So it's a different statute. It's involved in different statutes, um, different contexts. It doesn't address the national consensus argument. It doesn't address any of the arguments I've made in my brief. So, uh, because they weren't raised in that case. So, um, I think it's distinguishable for that reason. Um, I'd like to address, um, really, uh, strongly address Mr. Uh, opposing counsel's arguments about meaningful opportunity for release saying that, um, discretion is permitted, uh, that you can give a defacto life sentence to a juvenile offender for non homicide offense, if they have discretion, that is with respect to counsel are completely and absolutely wrong, uh, under Graham versus Florida. Um, actually most recently Jones versus Mississippi, United States Supreme court 2021, uh, the eighth amendment prohibits life without parole for offenders who are under 18 and committed non homicide offenses. Um, if you look at, you know, Graham versus Florida for a juvenile offender who did not commit homicide, the eighth amendment forbids a sentence of life without parole, Montgomery, Louisa versus Louisiana, the eighth amendment bars life without parole sentences for juvenile non homicide offensives, um, and then people versus Dorsey and Illinois Supreme court 2021, Graham held that the eighth amendment categorically prohibits the imposition of life without parole sense on a juvenile offender who did not commit homicide. So that is, so discretion does matter if we're talking about homicide offenses. But not non homicide offenses. If it's a non homicide offense, it's a categorical bar by the United States constitution, according to the U S Supreme court. So we're in our argument is that because Illinois parole statute doesn't quite go far enough to provide the meaningful opportunity for release because of the reasons I cited in my brief and for the reasons I've argued to today, uh, that, that remains a de facto life sentence. And that because it's a de facto life sentence and my client committed non homicide offenses, he cannot constitutionally be given a sentence that is greater than 40 years. I just want to make that clear. Um, and for that reason, uh, you know, counsel's argument that the court trial court had these, the factors available to it, or had, um, you know, evidence for these factors available to it. Um, doesn't really matter because I'm the eighth amendment discretion is irrelevant. And even for the proportionate penalties clause argument, we're talking about the factors. Um, this court's review of the constitutionality of my client sentence is DeNova, uh, and actually people versus house in the United States, and then sorry, the Illinois Supreme court recently emphasized that review of this kind of issue with DeNovo and requires this court to review the record itself as well. So, uh, I think that's wrong for that reason as well. Um, as far as, um, the ineffectiveness is concerned, um, counsel, uh, suggests that we're arguing that counsel was ineffective because he didn't know what Beck was, he didn't understand that the Beck decision existed at the time of sentencing, that's part of it. But the main argument is that counsel, uh, was presented with the opportunity to conduct a juvenile sentencing hearing, which has particular factors, particular mitigating factors that the trial court was required to consider as mitigating, and then presented no evidence on those factors whatsoever at the hearing, and instead only argued that according to this court's prior decision, the court, the trial court couldn't give it more than it could give an 80 year sentence. And he asked the court not to give more than 40 years, but that was it. He didn't present any evidence or argument about any of the factors related to youth and present any evidence or argument relating to, um, my client's mental health or cognitive problems, even though there was indicate there are indications in the record from the pretrial fitness reports that these were significant factors in, uh, my client's commission of this offense and that they were treatable, um, counsel really didn't do much, much of anything to, you know, put my client in a, in a better light and to suggest that his culpability was diminished by his youth, by his, by these mitigating factors and to show that he has rehabilitative potential, um, essentially this was a juvenile sentencing hearing with no juvenile sentencing evidence. So, um, for those reasons, your honors, and because there's a reasonable probability that had counsel presented this evidence, and because we know from the record and from, you know, indications from the pretrial sentence reports that this mitigating evidence exists, um, we ask you to find that trial counsel at the very least was ineffective. And if it does not find that trial counsel was ineffective, we do concede that this court would not need to address the constitutional issues in this case. Uh, so unless there are any other questions, um, your honors, I respectfully ask that you, uh, provide the relief request for your briefs. Thank you. Mr. Gerke, what do you say about forfeiture? Uh, so forfeiture, I mean, your, your honor is exactly right. We said that forfeiture is a limitation on parties and not the courts, but I'll also point out that, uh, counsel, just to be clear that the state argued forfeiture for the eighth amendment issue, but not for the proportionate penalties clause issue, which is something I address in my reply. So the state's corporate at the forfeiture argument, at least for the proportionate penalties clause issue. Um, but even apart from that, uh, uh, I don't think this issue is forfeited because this case was remanded for a juvenile sentencing hearing based on constitutional principles. And so we're in, we're on direct appeal from that case. So I think that in the interest of judicial economy, that issue should not be considered forfeit. Also the Stier case that opposing counsel refers to is a post conviction case. So in that case, the, the petitioner didn't raise the constitutional issue in their post conviction petition, and therefore wasn't allowed to raise that for the first time on appeal and on direct appeal. So it's a completely different context. And I'll also point out, and this is all in my reply brief, uh, the, uh, the, the appellate court and people versus Nieto and IETO held that this, this issue, even, even in that exact context that counsel presented that court held that this issue can't be forfeited. And at the very least, it's certainly raisable as plain air, your honors under a second pronged plain air. And because there was, uh, the evidence is close, uh, the sentencing evidence was close under first pronged plain air.  Thank you, Mr. Gervie. Thank you, Mr. Barrett. Uh, this matter will be taken under advisement and we will issue an order in due course.